UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOTANGA E. OBIA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 19-2340 (BAH) |
| J.P. MORGAN CHASE & CO., *et al.*, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

Plaintiff, Motanga E. Obia, proceeding *pro se*, initiated this lawsuit in August 2019 with the filing of his 42-page complaint against defendants J.P. Morgan Chase & Co. ("JPMC"), the Carlyle Group, and three individuals, David Rubenstein, Jamie Diamond and Peter L. Scher, purportedly arising from plaintiff's prior employment at JPMC. Compl. ¶¶ 7, 14, 73, ECF No. 1. Pending before the Court are defendants' motions to dismiss the complaint and plaintiff's motion to submit an amended complaint. *See* Defs. David Rubenstein and the Carlyle Group's Motion to Dismiss Plaintiff's Complaint ("Carlyle Defs.' Mot."), ECF No. 13; Defs. JPMC, Jamie Diamond and Peter L. Scher's Motion to Dismiss Plaintiff's Complaint ("JPMC Defs.' Mot."), ECF No. 15; and Pl.'s Mot. for Leave of Court to Amend Complaint ("Pl.'s Mot."), ECF No. 24. For the reasons discussed below, defendants' motions to dismiss are GRANTED and plaintiff's motion for leave to amend his complaint is DENIED.[1]

---

[1] Given this disposition, plaintiff's other pending motions, including Pl.'s Motion to the Court: Request for Counsel, ECF No. 21; Pl.'s Motion to Leave for E-Filing Permission, ECF No. 22; and Pl.'s Motion to Stay All Deadlines, ECF No. 23, are denied as moot.

I.      **BACKGROUND**

While plaintiff's complaint, consisting of over 100 paragraphs of factual allegations interrupted with multiple diagrams, is difficult to follow, the following allegations may be distilled: JPMC employed plaintiff, an African American male, as a Relationship Sales Officer – Associate from March 28, 2016 until his termination on July 14, 2017.  *See* Compl. ¶¶ 7, 14, 73.  According to plaintiff, on July 28, 2016, he reported "an accounting discrepancy," *id.* ¶ 18, during a "heated meeting" with supervisors, *id.* ¶ 20, who subsequently were "abusive" and "threatening" towards him, *id.* ¶ 19; *see id.* ¶ 24, and who, along with other JPMC officers, "engaged [in] a shredding exercise" to hide the discrepancy, *id.* ¶ 21.

In September 2016, plaintiff allegedly encountered, at a downtown Cosi restaurant, David Rubenstein ("Rubenstein"), *see id.* ¶ 22, a co-founder and former chief executive officer of a global investment firm called The Carlyle Group ("Carlyle"), *see* Carlyle Defs.' Mem. in Support of Mot. to Dismiss Pl.'s Compl. ("Carlyle Defs.' Mem.") at 1, ECF No. 13-1.  Plaintiff alleged that, on September 12, 2016, and October 13, 2016, Rubenstein communicated with "Senior Executives within [JPMC]," including Chief Executive Officer Jamie Dimon, to "expose Plaintiff to leadership in a negative manner . . . to single-out the Plaintiff and encourage the Plaintiff's discharge[.]"  Compl. ¶ 22.  What followed was a "scheme" to ridicule, abuse, aggravate, discriminate against, harass, sabotage, retaliate against, thwart career advancement of, and create a hostile work environment for, and conspire against plaintiff.  *See generally id.* ¶¶ 23-34, 39-40, 46-49, 55-57.

Late in 2016, plaintiff's "medical condition began to worsen," prompting him to take "a lot of time away" from work.  *Id.* ¶ 28.  He reportedly had "an episode (slurred speech) on December 2, 2016.  *Id.* ¶ 29 (emphasis removed).  At some point, plaintiff requested an

2

unspecified accommodation for a condition he does not identify, *see id.* ¶ 32, and was granted short-term disability leave, *see id.* ¶¶ 43-44.

The mistreatment plaintiff allegedly experienced extended beyond the workplace. According to plaintiff, "the Respondent" subjected him to "surveillance through various means of stalking . . . across state-lines and . . . monitoring . . . inside his home." *Id.* ¶ 60.  Defendants allegedly "engage[d] in . . . repulsive conduct . . . by converting [his] apartment into a 'laboratory' and extracting information from the Plaintiff's apartment, while making the Plaintiff an experimental subject through the monitoring of [his] medical condition [and] sleeping patterns[.]" *Id.* ¶ 90.  In this way, defendants allegedly gathered plaintiff's "Bio-metrics, Bio-Rhythms and Human Behavioral data." *Id.* ¶ 91.  Defendants also were responsible for hacking his cell phone, manipulating his Uber account, and installing "phishing software" on his computer hard drive, *see id.* ¶¶ 85-87, 90-91, and thus were able to monitor his text messages and interfere with his personal relationships, *see id.* ¶ 85.  In addition, defendants allegedly accused plaintiff of committing a crime, *see id.* ¶¶ 91, 97, caused records to reflect falsely that plaintiff had been incarcerated, *see id.* ¶ 92, disclosed medical information about plaintiff, *see id.* ¶¶ 92-93, conspired with his landlord to conduct video surveillance of plaintiff in his home, *see id.* ¶ 92, disseminated nude images of plaintiff, *see id.* ¶ 94, and published plaintiff's academic records, *see id.* ¶ 100.  Plaintiff allegedly has been stalked and subjected to death threats continuously since 2017.  *See id.* ¶ 104.

Plaintiff asserts sixteen separate claims (mis-numbered in complaint as fifteen), under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Equal Pay Act

("EPA"), 29 U.S.C. § 206(d), and the District of Columbia Consumer Protection Practices Act ("CPPA"),  D.C. Code § 28–3901 *et seq*.  He also brings two tort claims, defamation and intentional infliction of emotional distress, under District of Columbia law.  Plaintiff demands a declaratory judgment, injunctive relief, and monetary damages.

## II. LEGAL STANDARD

A plaintiff need only provide a "short and plain statement of [his] claim showing that [he is] entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).  Ideally, "[e]ach allegation [of a complaint is] simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Wood v. Moss*, 572 U.S. 744, 757–58 (2014).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully[.]").  In deciding a motion under Rule 12(b)(6), the whole complaint must be considered, with all factual allegations accepted as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555; *see also Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1265 (D.C. Cir. 2019).  The court cannot, however, "assume the truth of legal conclusions, nor [does it] 'accept inferences that are unsupported by the facts set out in the complaint.'" *Arpaio v.*

*Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alteration in original) (internal citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)); *see Iqbal*, 556 U.S. at 681 (stating that conclusory allegations are "not entitled to be assumed true").

In applying these standards to pleadings filed by *pro se* litigants, the court must consider the complaint "in light of all filings, including filings responsive to a motion to dismiss." *Johnson v. District of Columbia*, 927 F.3d 539, 541 (2019) (quoting *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam) (internal quotation marks omitted)). In addition, a *pro se* complaint must "'be liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Bowman v. Iddon*, 848 F.3d 1034, 1039 (2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted)). Nonetheless, a *pro se* plaintiff is not excused from complying with applicable procedural rules and "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. 678); *see also Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011).

### III. DISCUSSION

The JPMC Defendants move to dismiss on the ground that the complaint fails to meet Rule 8's clarity and brevity standards. *See* JPMC Defs.' Mem. of P. & A. in Support of Mot. to Dismiss ("JPMC Defs.' Mem."), at 5-6, ECF No. 15. All Defendants argue that dismissal is warranted under Rule 12(b)(6) because the complaint fails to state claims upon which relief can be granted. *See generally* Carlyle Defs.' Mem. at 4-11; JPMC Defs.' Mem. at 7-14.

Plaintiff's complaint is precisely the sort of pleading for which *Twombly* and *Iqbal* are designed. Its rambling and disorganized assertions contain, at best, conclusory statements

without factual allegations as support. The complaint offers little more than labels and conclusions, and contrary to Rule 8(a), fails even to make clear which counts are raised against which defendants. These defects alone warrant dismissal of the complaint. *See, e.g.*, *Uzoukwu v. Metro. Washington Council of Governments*, 748 F. App'x 355, 356 (D.C. Cir. 2019) (per curiam) (affirming dismissal of disability and sex discrimination claims where complaint failed to allege sufficient factual support); *Jenkins v. Nat'l R.R. Corp.*, No. 1:19-CV-2414, 2020 WL 3971938, at *3 (D.D.C. July 14, 2020) (dismissing complaint for failure to satisfy Rules 8(a) and 12(b)(6)). Examination of defendants' substantive arguments confirms that dismissal of plaintiff's legal claims is warranted.

### A.     Counts of Plaintiff's Original Complaint

#### 1.     Tortious Interference (Count 1)

Count I of the complaint alleges that "Rubenstein intentionally forced [and] induced [JPMC] to break its contractual obligation to the Plaintiff" and, as a result, plaintiff sustained economic and emotional injury. Compl. at 35.[2] Under District of Columbia law, "[a] prima facie case of tortious interference with business relations requires: (1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages." *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017) (citations, brackets and internal quotation marks omitted); *see Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038-39 (D.C. 2015) (applying same factors to claim of tortious interference with business or contractual relationships).

---

[2]     Plaintiff does not designate paragraph numbers for the complaint's introductory paragraph (titled "Nature of Action") and its 16 counts and thus these portions of the complaint are referenced by page number.

Defendants argue that Count I cannot proceed because insufficient facts are alleged to support it. *See generally* Carlyle Defs.' Mem. at 5-6. The Court concurs. The complaint alleges no facts to support an inference that Rubenstein was aware of a contractual relationship between plaintiff and JPMC. The few allegations presented on this subject, *see, e.g.*, Compl. ¶¶ 33, 47, 103, are far too speculative to describe whether or how Rubenstein interfered with that relationship or that he did so intentionally. Count 1 will therefore be dismissed. *See Precision Contracting Sols., LP v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113, 122 (D.D.C. 2019) (dismissing tortious interference claims against two defendants because complaint "is devoid of [factual] allegations about" them).[3]

### 2. Discrimination Claims (Counts 5-9, 13 and 15)

Plaintiff alleges discrimination based on race and national origin, *see* Compl. at 1, genetic information (Count 5), matriculation (Count 6), credit information (Count 7), religious beliefs (Count 8), personal appearance (Count 9), and retaliation (Count 15), in violation of the DCHRA. He also alleges that JPMC subjected him to a hostile work environment (Count 13) in violation of Title VII. The JPMC Defendants move to dismiss these discrimination claims on two grounds: that plaintiff failed to exhaust his administrative remedies before filing his lawsuit, and that these claims are untimely. *See generally* JPMC Defs.' Mem. at 8-9.

#### a. Exhaustion of Administrative Remedies

Generally, Title VII requires exhaustion of administrative remedies before a plaintiff may file an employment discrimination action in court. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) ((citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). If the

---

[3] No other count of the complaint expressly mentions Rubenstein or Carlyle. Consideration of the complaint in its entirety confirms that plaintiff fails to state a viable claim against these defendants, warranting dismissal of the complaint against them. In any event, defendants state that "The Carlyle Group . . . is not a legal entity." Corporate Disclosure Statement of the Carlyle Group at 1, ECF No. 10.

7

discriminatory acts alleged in a complaint are "not articulated in the administrative charge, are not reasonably related to the allegations in the charge, and do not fall within the scope of any administrative investigation that can reasonably be expected to follow, [plaintiff] may not proceed with these additional claims without first exhausting the administrative process." *Shipman v. Nat'l R.R. Passenger Corp. (AMTRAK)*, 241 F. Supp. 3d 114, 123 (D.D.C. 2017) (citation omitted), *aff'd sub nom. Shipman v. Nat'l R.R. Passenger Corp.*, No. 17-5066, 2017 WL 4217244 (D.C. Cir. Aug. 1, 2017). In other words, the lawsuit's scope "is limited . . . to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citing *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)); *see Payne*, 619 F.3d at 65 (reinforcing *Park* holding insofar as claims in civil suit must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination). This process "serves the important purpose[ ] of giving the charged party notice of the claim and narrow[ing] the issues for prompt adjudication and decision." *Latson v. Holder*, 82 F. Supp. 3d 377, 384 (D.D.C. 2015) (quoting *Park*, 71 F.3d at 907) (internal quotation marks omitted).

Plaintiff's administrative Charge of Discrimination, *see* JPMC Defs.' Mem., Ex. 1 at 3, ECF No. 15-1, pertains only to an unidentified disability.[4] Plaintiff checked only the box marked "DISABILITY," and the narrative portion of the Charge of Discrimination alleges defendants' failure to accommodate his disability, retaliation for having requested an accommodation for his disability, and termination due to his disability. *See id.*, Ex. 1 at 3. Nowhere does plaintiff mention race, national origin, genetic information, matriculation, credit information, religious

---

[4] Plaintiff submitted a second administrative Charge of Discrimination for alleged violations of the District of Columbia Family and Medical Leave Act ("DCFMLA"). *See* JPMC Mem., Ex. 1 at 2, ECF No. 15-1. While the complaint mentions the DCFMLA, *see, e.g.,* Compl. ¶¶ 8, 65, no count of the complaint asserts a DCFMLA claim.

beliefs, personal appearance, or hostile work environment, or retaliation on any basis other than disability.

"A plaintiff fails to exhaust [his] administrative remedies when the complaint [he] files in federal court includes a claim that was not raised in the administrative complaint." *Mogenhan v. Shinseki*, 630 F. Supp. 2d 56, 60 (D.D.C. 2009); *see Oviedo v. Washington Metro. Area Transit Auth.*, 948 F.3d 386, 393 (D.C. Cir. 2020) (affirming dismissal of denied promotion and demotion claims that were not included in Charge of Discrimination); *see also Park*, 71 F.3d at 907. By raising only disability-related claims at the administrative level, plaintiff may not now pursue claims of discrimination on any other basis. *See Haynes v. District of Columbia Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019); *see also Pickett v. Brennan*, No. 19-5170, 2020 WL 873526, at *1 (D.C. Cir. Feb. 13, 2020) (per curiam) (affirming dismissal of Title VII claim because "[a]ppellant has not shown that he exhausted his administrative remedies as to . . . his claims"); *Amiri v. Securitas Sec. Servs. USA, Inc.*, 608 F. App'x 15 (D.C. Cir. 2015) (concluding that "district court properly determined that appellant failed to exhaust his administrative remedies with respect to his discrimination claim under Title VII . . . because appellant did not present the claim in his administrative charge"); *Massey v. Gray*, 85 F. Supp. 3d 104, 109 (D.D.C. 2015) (concluding that allegations of discrimination based on gender, race, disability and retaliation raised for the first time in an amended complaint "are neither like nor reasonably related to her age discrimination claim" in the administrative charge of discrimination "and therefore are not properly before the Court"), *aff'd sub nom. Massey v. District of Columbia*, No. 15-7041, 2015 WL 9310126 (D.C. Cir. Dec. 9, 2015) (per curiam).

### b. Timeliness

When plaintiff initiated his administrative proceedings at the District of Columbia Office

of Human Rights, *see* Compl. ¶ 4, an administrative charge of discrimination must be filed within 300 days of the alleged discriminatory action, *see* 42 U.S.C. § 2000e-5(e) (providing that "charge shall be filed by . . . the person aggrieved within three hundred days after the alleged unlawful employment practice occurred"). Although a discrimination claim under the DCHRA may proceed in court without exhausting administrative remedies, *see Ivey v. District of Columbia*, 949 A.2d 607, 616 (D.C. 2008), a plaintiff must file suit "within one year of the unlawful discriminatory act, or the discovery thereof[,]" D.C. Code § 2–1403.16.

According to plaintiff's administrative Charge of Discrimination, the alleged discriminatory acts occurred between January 19, 2017 and July 14, 2017. *See* JPMC Defs.' Mem., Ex. 1 at 3. Assuming plaintiff's employment discrimination claims arose no later than July 14, 2017, the date of his termination, plaintiff should have filed this Charge of Discrimination within 300 days and his DCHRA claims within one year. Plaintiff apparently filed his Charge of Discrimination timely with respect to the Title VII claims on October 18, 2017. *See id.* Timeliness cannot salvage discrimination claims based on race or national origin, or hostile work environment claim, however, because plaintiff had not raised these claims at the administrative level. In addition, since the filing of the instant lawsuit on August 2, 2019, occurred more than one year after the occurrence of the alleged discrimination, plaintiff's DCHRA claims based on genetic information, matriculation, credit information, religious beliefs, and personal appearance, and a retaliation claim unrelated to disability, are time-barred. *See Sims v. Sunovion Pharm., Inc.*, No. 1:17-CV-2519, 2019 WL 690343, at *7 (D.D.C. Feb. 19, 2019) (dismissing "any claim of discrimination under the Title VII, the ADEA, or the ADA which occurred" more than 300 days prior to filing Charge of Discrimination); *Protopapas v. EMCOR Gov't Servs., Inc.*, 251 F. Supp. 3d 249, 255 (D.D.C. 2017) (dismissing DCHRA claim

as "barred by the one-year statute of limitations"). Counts 5 through 9, 13 and 15 of the complaint are therefore dismissed.

### 3. Tort Claims (Counts 10 and 14)

Plaintiff brings two common law tort claims: intentional infliction of emotional distress ("IIED") in Count 10 and defamation in Count 14. Defendants move to dismiss these claims as time-barred. *See* JPMC Defs.' Mem. at 9-10.

A defamation claim must be brought within one year from the date the claim accrues. *See* D.C. Code § 12-301(4). "Defamation occurs on publication, and the statute of limitations runs from the date of publication." *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882 (D.C. 1998) (citations omitted). Ordinarily a plaintiff must raise an IIED claim within three years of its accrual. *Saunders v. Nemanti*, 580 A.2d 660, 665 (D.C. 1990) (holding that "an independent action for [IIED], not intertwined with any of the causes of action for which a period of limitation is specifically provided in the other provisions of [D.C. Code §] 12-301, is governed by the general three-year limitation of [D.C. Code §] 12-301(8)"). If, however, the events giving rise to the IIED claim are intertwined with a cause of action for which a statute of limitations is specified, the IIED claim is subject to the statute of limitations for the intertwined claim. *See id.*; *Rendall-Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997) (where IIED claim "involved an assault and battery . . . the one-year period of limitation for assault and battery applies"). Based on references in Count 10 to "the exposure of privileged communication with the intent to subject the [p]laintiff to humiliation, radical[] shame, in-decent exposure of private information and nudity," Compl. at 38, the IIED claim is intertwined with the defamation claim and, therefore, is subject to a one-year limitations period.

According to plaintiff, defendants intentionally harmed his reputation and professional

11

stature by "publishing communication pertaining [to him] through Mass Media outlets," Compl. at 40, and the last such event allegedly occurred on February 7, 2018, *see id.* ¶ 101. Plaintiff filed this lawsuit on August 2, 2019, more than one year later. Therefore, both the defamation and IIED claims are time-barred. *See Bond v. U.S. Dep't of Justice*, 828 F. Supp. 2d 60, 78 (D.D.C. 2011) (applying one-year limitations period to IIED claim intertwined with defamation claim and dismissing both claims as time-barred). Counts 10 and 14 of the complaint must be dismissed.

### 4. Disability Discrimination Claims (Counts 3, 4, and 11)

The ADA makes "unlawful for an employer to discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (quoting 42 U.S.C. § 12112(a)) (internal quotation marks omitted). Employment discrimination based on disability is prohibited under District of Columbia law also. *See* D.C. Code § 2-1402.11(a)(1).

Plaintiff's disability claims fail for being wholly insufficient in alleging facts that would identify the disability or establish that his condition qualifies as a disability under the ADA. *See, e.g., Thompson v. District of Columbia*, 272 F. Supp. 3d 17, 22 (D.D.C. 2017) (dismissing ADA claim where "[p]laintiff never identifies this disability, nor does she allege whether—or how— this disability . . . impacts her ability to perform certain jobs"); *Mitchell v. Yates*, 402 F. Supp. 2d 222, 228 (D.D.C. 2005) (noting that "complaint must adequately allege facts sufficient to support the claim that [plaintiff] has a 'disability' within the meaning of the ADA, or else be subject to dismissal"). Instead, the complaint merely mentions a "medical condition," *see* Compl. ¶¶ 28,

31, accuses defendants of "aggravat[ing] the [p]laintiff's stress levels and disability," *id.* ¶ 25, alleges that plaintiff sought some unspecified accommodation, *see id.* ¶¶ 28, 32, and states that plaintiff was absent from work "a lot" due to illness, *see id.* ¶¶ 28, 32. None of these allegations shows that plaintiff suffers a "disability," which for ADA purposes is defined as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment[.]

42 U.S.C. § 12102(1). His references to "an episode (slurred speech)" on December 2, 2016, Compl. ¶ 29 (emphasis removed), and to medical leave taken in early 2017, *see, e.g., id.* ¶¶ 44, 54, shed no light on this critical matter.

Furthermore, even if plaintiff had identified a disability, the complaint fails to allege facts connecting an alleged disability to an adverse employment action, such as plaintiff's termination. *See Perez v. District of Columbia Dep't of Employment Servs.*, 305 F. Supp. 3d 51, 58 (D.D.C. 2018) (dismissing disability discrimination claim where plaintiff "never once offers factual allegations supporting a causal nexus between the adverse actions (her discharge or pay discrepancy) and her disability"). Counts 3, 4 and 11 of the complaint must therefore be dismissed.

### 5. Equal Pay Act Claim (Count 12)

The EPA makes unlawful for an employer to "discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). Plaintiff alleges that JPMC violated the EPA by "engag[ing] in direct discrimination" against him "through willful compensation

discrimination," Compl. at 30, apparently due to a "differential in pay between male and female employees," *id.*, for which plaintiff allegedly "sustained, and will continue to sustain, economic damages" and emotional distress, *id.*

An EPA claim has three elements: "(1) that the plaintiff 'was doing substantially equal work on the job' as members of the opposite sex, (2) that the plaintiff's job 'was performed under similar working conditions,' and (3) that the plaintiff 'was paid at a lower wage than those members of the opposite sex.'" *Perez*, 305 F. Supp. 3d at 56 (quoting *Cornish v. District of Columbia*, 67 F. Supp. 3d 345, 360 (D.D.C. 2014)) (additional citation omitted). Wholly missing from plaintiff's complaint are any facts to support an EPA claim. The sole reference to plaintiff's pay in the complaint is the assertion that he was paid "drastically below market level by approximately $40,000." Compl. ¶ 36. He fails to allege that he was paid less than any other employee because of his sex. For this reason, Count 12 must be dismissed. *See Carty v. District of Columbia Gov't*, No. 10-7081, 2010 WL 4340405, at *1 (D.C. Cir. Oct. 21, 2010) (concluding that "Equal Pay Act . . . claim was properly dismissed for failure to state a claim because the complaint did not contain any allegation of wage discrimination on the basis of gender"); *Perez*, 305 F. Supp. 3d at 56–57.

### 6. Deceptive and Unfair Trade Practice (Count 16)[5]

In Count 16, plaintiff alleges a violation of the District's Consumer Protection Practices Act ("CPPA") based on being "misled" by JPMC with respect to "the terms and conditions of [its] diversity and inclusion program[.]" Compl. at 41. He alleges that JPMC "engaged in false advertising of employment compensations and other terms and conditions of employment (i.e Disciplinary Practices)," causing him to suffer "psychological, professional and social harm to

---

[5] Plaintiff designates two claims "Count 15," and properly numbered, the second Count 15 is "Count 16."

[his] reputation and future economic accomplishments." *Id.* Plaintiff's reliance on the CPPA is misplaced.

"The CPPA applies only to consumer-merchant relationships." *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 948 (D.C. Cir. 2017) (citing *Snowder v. District of Columbia*, 949 A.2d 590, 598–600 (D.C. 2008)); *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. 1981). Plaintiff does not allege any consumer-merchant relationship between himself and any defendant, and without such a relationship the CPPA claim must be dismissed. *See Plummer v. Safeway, Inc.*, 934 F. Supp. 2d 191, 199 (D.D.C. 2013) (dismissing CPPA claim where plaintiff "does not assert a consumer-merchant relationship with [defendant], nor can one be inferred since [plaintiff] is [an employee of defendant] and the only factual information in the record relates to his employee-employer relationship with [defendant]"). Count 16 therefore is dismissed.

### 7.  Vicarious Liability (Count 2)

Through Count 2, plaintiff attempts to hold JPMC liable for the tortious conduct of its employees. *See generally* Compl. at 35-36. Yet, all of the underlying claims fail and, consequently, Count 2 fails also and must be dismissed.

### B.  Plaintiff's Motion for Leave to Amend the Complaint

Following the filing of defendants' motions to dismiss, the Court issued an Order, ECF No. 16, advising plaintiff of his obligation to respond to these motions and cautioning that, if he failed to file a response by January 17, 2020, defendants' motions would be resolved without the benefit of his position.[6] Rather than filing an opposition to defendants' motions, plaintiff filed a motion for leave to amend his complaint, ECF No. 24, but without filing an actual copy of the

---

[6]   Plaintiff's motion to amend his complaint is treated as if it had been filed on January 17, 2020, the date of receipt by the Clerk of Court.

proposed pleading as required under the Local Civil Rules of this Court. *See* LCvR 15.1 (requiring that "[a] motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended.").

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). While leave to amend a complaint should be freely granted when justice so requires, *see Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citing Fed. R. Civ. P. 15(a)(2)), the Court may deny a motion to amend if such amendment would be futile, *see Foman*, 371 U.S. at 182; *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). "Amendment is futile if the amended complaint would not withstand a motion to dismiss." *Hall & Assocs. v. Envtl. Prot. Agency*, 956 F.3d 621, 630 (D.C. Cir. 2020) (citing *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (per curiam)).

As already pointed out, plaintiff's motion for leave to amend his complaint fails to comply with Local Civil Rule 15.1 because a proposed amended pleading is not attached as an exhibit. The proposed pleading is included in the record of this case only because each set of defendants provided a copy of this pleading, which had been furnished in an email from plaintiff to defense counsel, as an exhibit to its respective opposition to plaintiff's motion. *See* JPMC Defs.' Opp'n to Pl.'s Mot. for Leave to Am. Compl, Ex. A, ECF No. 29-1; Carlyle Defs.' Opp'n to Pl.'s Mot. for Leave to Am. His Compl., Ex. A, ECF No. 33-2.

The proposed amended complaint suffers the same pleading defects as the original, including, in particular, the lengthy, disorganized and rambling nature of the allegations and claims. Its factual allegations are woefully insufficient to support the claims plaintiff seeks to assert, whether against the defendants named in the original complaint, or against the new defendants named in the proposed amended complaint. This proposed pleading could not

survive a motion to dismiss and, accordingly, the Court concludes that amendment is futile. *See Araya v. Schwartz*, No. 15-7022, 2015 WL 5210465, at *1 (D.C. Cir. July 21, 2015) (affirming district court rulings that appellant was not entitled to amend complaint under Fed. R. Civ. P. 15(a) and that proposed amendments were futile).

### IV. CONCLUSION

Plaintiff's original complaint fails to state a claim upon which relief can be granted, warranting grant of defendants' motions to dismiss. Plaintiff's motion for leave to amend the complaint is denied as futile, and plaintiff's three remaining motions are denied as moot.

An Order consistent with this Memorandum Opinion will be issued contemporaneously.

DATE: September 8, 2020

/s/ *Beryl A. Howell*

BERYL A. HOWELL
Chief Judge